**Electronically Filed
Intermediate Court of Appeals
30734
22-OCT-2012
08:34 AM**

NO. 30734

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee,
v.
DANIEL KAHANAOI, Defendant-Appellant.

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR. NO. 09-1-0659)

MEMORANDUM OPINION
(By: Fujise, Presiding Judge, Reifurth and Ginoza, JJ.)

Defendant-Appellant Daniel Kahanaoi (Kahanaoi) appeals from the Judgment of Conviction and Sentence (Judgment) filed on September 1, 2010 in the Circuit Court of the First Circuit (circuit court).[1] Plaintiff-Appellee State of Hawai'i (State) charged Kahanaoi with Murder in the Second Degree, in violation of Hawaii Revised Statutes (HRS) § 707-701.5 (1993)[2] and § 706-

---

[1] The Honorable Glenn J. Kim presided.

[2] HRS § 707-701.5 provides:

[§707-701.5] **Murder in the second degree.** (1) Except as provided in section 707-701, a person commits the offense of murder in the second degree if the person intentionally or knowingly causes the death of another person.

656 (Supp. 2011)[3] (Count I); Burglary in the First Degree, in violation of HRS § 708-810(1)(c) (1993)[4] (Count II); Place to Keep Pistol or Revolver, in violation of HRS § 134-25 (Supp. 2011) (Count III); Carrying or Use of Firearm in the Commission of a Separate Felony, in violation of HRS § 134-21 (Supp. 2011)[5] (Counts IV & V); and Violation of a Temporary Restraining Order, in violation of HRS § 586-4 (Supp. 2011) (Count VI). After a jury trial, Kahanaoi was found guilty as charged in Counts I, II, IV & V.

On appeal, Kahanaoi asserts the following points of error: (1) trial counsel provided ineffective assistance of counsel, (2) the circuit court erred in failing to give an "imperfect self-defense" instruction, and (3) the circuit court erred in failing to instruct the jury on the included offense of manslaughter.

---

[3] HRS § 706-656 provides that "persons convicted of second degree murder . . . shall be sentenced to life imprisonment with possibility of parole."

[4] HRS § 708-810 provides, in pertinent part:

§708-810 **Burglary in the first degree.** (1) A person commits the offense of burglary in the first degree if the person intentionally enters or remains unlawfully in a building, with intent to commit therein a crime against a person or against property rights, and:

. . . .

(c)    The person recklessly disregards a risk that the building is the dwelling of another, and the building is such a dwelling.

[5] HRS § 134-21 provides, in pertinent part:

[§134-21] **Carrying or use of firearm in the commission of a separate felony; penalty.** (a) It shall be unlawful for a person to knowingly carry on the person or have within the person's immediate control or intentionally use or threaten to use a firearm while engaged in the commission of a separate felony[.]

2

For the reasons discussed below, we affirm the circuit court's Judgment, but without prejudice to Kahanaoi filing a petition pursuant to Rule 40 of the Hawai'i Rules of Penal Procedure (HRPP) as specified below.

I.   **Ineffective Assistance of Counsel Claim**

Kahanaoi fails to meet his burden to establish ineffective assistance of counsel.  To prevail on an ineffective assistance of counsel claim, Kahanaoi must establish "that there were specific errors or omissions reflecting counsel's lack of skill, judgment, or diligence" and "that such errors or omissions resulted in either the withdrawal or substantial impairment of a potentially meritorious defense."  State v. Wakisaka, 102 Hawai'i 504, 514, 78 P.3d 317, 327 (2003) (citation and footnote omitted).  Kahanaoi must show "a possible impairment, rather than a probable impairment, of a potentially meritorious defense." Wakisaka, 102 Hawai'i at 514, 78 P.3d 327.

A.   **Angle of the Bullet Path**

Kahanaoi argues that, in order to disprove eyewitness testimony that Kahanaoi shot Kimsel in the back as Kimsel lay on the ground, trial counsel should have elicited mathematical calculations from expert witness William Goodhue, MD (Dr. Goodhue) about the angle of the path of the second bullet.

Kahanaoi has not shown that failure to elicit testimony regarding mathematical calculations reflected trial counsel's lack of skill, judgment, or diligence that resulted in the withdrawal or substantial impairment of a potentially meritorious defense.  The jury had the opportunity to hear evidence challenging the eyewitnesses' version of the events.  Trial counsel's questioning of Dr. Goodhue and Dr. Manoukian, as well as the introduction into evidence of the autopsy photo, highlighted inconsistencies with the eyewitnesses' version of the angle at which Kahanaoi shot Kimsel in the back.

3

Furthermore, "[i]neffective assistance of counsel claims based on the failure to obtain witnesses must be supported by affidavits or sworn statements describing the testimony of the proffered witnesses." State v. Richie, 88 Hawai'i 19, 39, 960 P.2d 1227, 1247 (1998). Here, Kahanaoi fails to present any sworn statement that Dr. Goodhue would have testified as to the mathematical calculation that Kahanaoi claims should have been elicited. It is mere speculation that Dr. Goodhue would have testified to Kahanaoi's suggested mathematical calculations.

B. **911 Recording**

Kahanaoi contends that the 911 recording, which was contemporaneous with the two shots that were fired, "contains very strong evidence that Kahanaoi did not kill Kimsel *intentionally* or *knowingly*" and "contains evidence that strongly refutes the testimony of the prosecution witnesses." Kahanaoi asserts that, as reflected in the trial transcripts when the 911 recording was played for the jury, certain portions were noted as being "undistinguishable" in the transcript. Kahanaoi argues in his opening brief that trial counsel should have done more to clarify the "undistinguishable" portions, whether by enhancing the recording, presenting or soliciting expert or other witness testimony to clarify the recording, or by way of stipulation with the prosecution.

Kahanaoi's opening brief appears to suggest that his defense was affected because clarifying evidence as to the 911 recording would have established that his voice could be heard referring to Kimsel's rug, and also that his voice could be heard saying "911." Ostensibly, this would support Kahanaoi's claim of self-defense under his version of events that: Kahanaoi went to Kimsel's house to pick up Rusty Anoba (Anoba); Kimsel motioned for him to come into the house; Kahanaoi noticed and mentioned that Kimsel had a new rug and thus Kahanaoi took off his shoes;

Kimsel then reached for a gun from his waistband; Kahanaoi grabbed the gun from Kimsel at which point Kahanaoi slipped due to being only in socks and the gun accidentally discharged (first shot); that Kahanaoi then said to call 911; and that Kahanaoi thereafter intentionally fired the gun (second shot) when he was about eight feet away from Kimsel, because Kimsel was bent over and appeared to be reaching for something that looked like a knife on the floor.  Kahanaoi argues that "[a] nine second delay between the first and second shots, and all of the conversation that goes on between the two shots is strong evidence that Kahanaoi was acting in self-defense and did not enter Kimsel's house with the intention of killing him or anyone else."

Similar to the issue addressed above, Kahanaoi fails to support his claim of ineffective assistance of counsel with any sworn statements by witnesses that he asserts should have been called to clarify the 911 recording.  Richie, 88 Hawai'i at 39, 960 P.2d at 1247.  Moreover, there is nothing in the record on appeal, including a sworn statement, which indicates what an enhanced 911 recording would reflect.  The audio recording in the record was played for the jury and thus the jury had the opportunity to hear that version.  Without anything in the record to show that an enhanced version would provide clarity as to what Kahanaoi purports he was saying at the time, as compared to the version in the record, the claim that trial counsel was ineffective for not obtaining an enhanced 911 recording "amounts to nothing more than speculation."  Cf. State v. Reed, 77 Hawai'i 72, 84, 881 P.2d 1218, 1230 (1994), overruled on other grounds by State v. Balanza, 93 Hawai'i 279, 1 P.3d 281 (2000).

Responding to the State's argument that his ineffective assistance of counsel claim fails for lack of sworn statements from witnesses regarding the 911 recording, Kahanaoi argues in his reply brief that:

5

> [t]he point in the opening brief is that even the unenhanced
> version of the recording contains exculpatory evidence that
> was not properly presented to the jury, because trial
> counsel did not even attempt to introduce a stipulated
> transcript or otherwise bring exculpatory evidence on the
> recording to the jury's attention.

We also disagree with Kahanaoi's argument in his reply brief. First, he points to nothing in the record suggesting that a stipulated transcript was possible, where that would be subject to agreement by the prosecution. Second, trial counsel asked Kahanaoi a series of questions to draw the jury's attention to portions of the 911 recording where Kahanaoi purported to say certain things that could not be heard on the recording or could not be heard clearly, including his reference to the rug and to call 911. Thus, trial counsel made a concerted effort to point out exculpatory evidence based on the 911 recording in evidence.

## C. Self-Defense Justification

The self-defense justification requires an actor to retreat if he can safely do so. HRS § 703-304(5)(b) (1993 Repl.) ("The use of deadly force is not justifiable under this section if . . . [t]he actor knows that he can avoid the necessity of using such force with complete safety by retreating[.]").

Kahanaoi contends that trial counsel should have had Kahanaoi explain on direct examination, rather than on redirect, why he did not retreat when the garage door was open and there was no one and nothing impeding his exit. Under Kahanaoi's theory of defense, and as he testified during his direct examination, he fired the second shot after grabbing the gun from Kimsel because Kahanaoi thought that Kimsel was reaching for something that looked like a knife. It was trial counsel's judgment call at that point whether to further question Kahanaoi on direct about his ability to safely retreat, or wait to see what testimony was elicited from Kahanaoi on cross-examination. The order and manner of presenting Kahanaoi's testimony was part

of trial counsel's tactical strategy. "Defense counsel's tactical decisions at trial normally will not be questioned by a reviewing court. Lawyers are permitted broad latitude to make on-the-spot strategic choices in the course of trying a case." State v. Onishi, 64 Haw. 62, 63, 636 P.2d 742, 743 (1981) (citations omitted).

D. **Failure to Adequately Question Anoba**

Kahanaoi contends that trial counsel provided ineffective assistance of counsel when he (1) failed to enter a photograph of a 9mm semiautomatic gun into evidence, (2) failed to question witness Anoba about whether Kimsel had a 9mm gun in his house while she was on the stand as a witness for the State, and (3) failed to subpoena Anoba to testify as a witness for the defense.

As previously noted, in order to establish ineffective assistance of counsel for failure to call a witness, Kahanaoi must provide an affidavit or sworn statement describing the testimony that would have been proferred. Richie, 88 Hawai'i at 39, 960 P.2d at 1247. In the instant case, trial counsel made an offer of proof before the circuit court as to Anoba's expected testimony for the defense. His offer of proof was that:

> [Anoba] did not see the weapons in the house that particular evening when she was there or the afternoon she was there. She had seen the revolver that he had in the house constantly since she's known him. Two to three months before the shooting, she had seen other weapons in the house, one of which is a .9 millimeter. It appears to be, from showing her pictures of weapons, a .9 millimeter pistol that she saw within two to three months prior to the shooting.

Nonetheless, Kahanaoi points to no sworn statement showing that Anoba would testify in this manner, regardless of whether she was questioned about the guns during the prosecution's case or if she was subpoenaed to appear during the defense's case. Id. Moreover, Kahanaoi asserts a picture of a

9mm semiautomatic was necessary so that Anoba could testify whether she saw a similar type of gun in Kimsel's home.[6] Without a sworn statement as to her proffered testimony, the asserted need for a picture of a 9mm semiautomatic is moot. Therefore, Kahanaoi fails to establish that his trial counsel was ineffective on these grounds.

E. **Evidence that Anoba was Afraid Kahanaoi was Going to Kill Her**

Kahanaoi contends "trial counsel failed to object to extremely prejudicial evidence which [the circuit court] had ruled inadmissible and at one point actually elicited such evidence himself when he asked [Anoba] about her statements to the police that she was afraid that Kahanaoi was going to kill her." Kahanaoi fails to argue this point and thus it is waived. Hawai'i Rules of Appellate Procedure (HRAP) Rule 28(b)(7).

II. **Instruction Regarding Imperfect Self-Defense**

Kahanaoi contends that the circuit court plainly erred in failing to give a jury instruction on "imperfect self-defense." As Kahanaoi appears to acknowledge, Hawai'i has not recognized such a defense. He argues, however, that HRS § 703-310(1) (1993)[7] should be interpreted to provide that where an

_____

[6] Kahanaoi testified that he discarded the gun used in shooting Kimsel. No gun was admitted into evidence.

[7] HRS § 703-310 provides, in pertinent part:

§703-310 **Provisions generally applicable to justification.** (1) When the actor believes that the use of force upon or toward the person of another is necessary for any of the purposes for which such belief would establish a justification under sections 703-303 to 703-309 but the actor is reckless or negligent in having such belief or in acquiring or failing to acquire any knowledge or belief which is material to the justifiability of the actor's use of force, the justification afforded by those sections is unavailable in a prosecution for an offense for which recklessness or negligence, as the case may be, suffices to establish culpability.

actor honestly but unreasonably believes the use of deadly force is justified, he can only be convicted of manslaughter, not murder.

The Hawai'i Supreme Court has noted that interpreting HRS § 703-310 in the manner that Kahanaoi proposes has not been adopted in Hawai'i. State v. McNulty, 60 Haw. 259, 588 P.2d 438 (1978), *overruled on other grounds by* Raines v. State, 79 Hawai'i 219, 900 P.2d 1286 (1995). The supreme court stated that "[a]lthough a few jurisdictions recognize that one who honestly but unreasonably believed that the use of deadly force was necessary in self-defense can only be convicted of manslaughter, HRS § 703-310[8] has not yet been so construed nor has this jurisdiction ever recognized such a view." McNulty, 60 Haw. at 269 n.9, 588 P.2d at 446 n.9 (citations omitted).

The circuit court did not plainly err in not giving the jury an "imperfect self-defense" instruction.

## III. Instruction Regarding Lesser Included Offense of Manslaughter

"[T]rial courts must instruct juries as to any included offenses when there is a rational basis in the evidence for a verdict acquitting the defendant of the offense charged and convicting the defendant of the included offense[.]" State v. Haanio, 94 Hawai'i 405, 413, 16 P.3d 246, 254 (2001) (internal quotation marks omitted); HRS § 701-109(5) (1993).

Kahanaoi contends there was a rational basis for the circuit court to instruct the jury on the lesser included offense of manslaughter, but presents no argument based on the evidence to support his contention. He only vaguely points to the previous arguments in his opening brief.

_____

[8]   The current version of HRS § 703-310(1) is materially the same as the 1976 version considered in McNulty.

Even if we assume *arguendo* that there was a rational basis to instruct the jury on the lesser included offense of manslaughter, the lack of such an instruction would be harmless in this case.

> The error is harmless because jurors are presumed to follow the court's instructions, and, under the standard jury instructions, the jury, in reaching a unanimous verdict as to the charged offense [or as to the greater included offense, would] not have reached, much less considered, the absent lesser offense on which it should have been instructed.

Haanio, 94 Hawai'i at 415-16, 16 P.3d at 256-57 (internal quotation marks and citation omitted). Even in cases where no standard instructions or other instructions on included offenses were given, this court and the Hawai'i Supreme Court have held post-Haanio that when a jury finds a defendant guilty as to the charged offense, failure to instruct the jury on an included offense is harmless. State v. Pauline, 100 Hawai'i 356, 364, 381, 60 P.3d 306, 314, 331 (2002); State v. Gunson, 101 Hawai'i 161, 64 P.3d 290 (App. 2003), *cert. dismissed as improvidently granted by*, 104 Hawai'i 78, 85 P.3d 185 (2003).

We further note that in this case, although no instructions on lesser included offenses were given, the circuit court did instruct the jury as follows:

> A verdict must represent the considered judgment of each juror, and in order to reach a verdict, it is necessary that each juror agree thereto. In other words, your verdict must be unanimous.
>
> Each of you must decide the case for yourself, but it is your duty to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violating your individual judgment. In the course of your deliberations, do not hesitate to re-examine your own views and change your opinion if convinced it is erroneous. But do not surrender your honest belief as to the weight or effect of evidence for the mere purpose of returning a verdict.

In this case, the jury reached a unanimous verdict on the charge of murder in the second degree. Therefore, under Haanio, Pauline

10

and Gunson, the absence of an instruction on the lesser included offense of manslaughter was harmless.

## IV.  **Petition Under HRPP Rule 40**

The Hawai'i Supreme Court has recognized that:

> not every trial record is sufficiently developed to determine whether there has been ineffective assistance of counsel; indeed, a defendant is often only able to allege facts that, if proved, would entitle him or her to relief. Therefore, we hold that where the record on appeal is insufficient to demonstrate ineffective assistance of counsel, but where: (1) the defendant alleges facts that if proven would entitle him or her to relief, and (2) the claim is not patently frivolous and without trace of support in the record, the appellate court may affirm defendant's conviction without prejudice to a subsequent Rule 40 petition on the ineffective assistance of counsel claim.

State v. Silva, 75 Haw. 419, 439, 864 P.2d 583, 592-93 (1993).

In this case, Kahanaoi's appellate counsel was not appointed until well after the appeal was filed and had no opportunity to develop the record in addressing the claim for ineffective assistance of counsel.  Considering the grounds upon which Kahanaoi bases his claim for ineffective assistance of counsel, we conclude that regarding two of those grounds, Kahanaoi has alleged facts that if proven could potentially entitle him to relief and his claim is not patently frivolous and without trace of support in the record.  Id. at 439, 864 P.2d at 592.  First, if Kahanaoi can prove that an enhanced or clarified 911 recording showed that his voice is referencing the rug and that his voice said "911" after the first shot, it would potentially bolster his testimony regarding the events that day and potentially raise some doubt about the credibility of the prosecution witnesses.[9]  Second, if Kahanaoi can prove that Anoba saw guns in Kimsel's home within months prior to the incident,

---

[9] Kahanaoi argues that the prosecution's witnesses testified that Kahanaoi kept asking "Where's Rusty?," but that the 911 recording does not reflect Kahanaoi's voice asking about Rusty.

11

particularly a 9mm semiautomatic, that would potentially bolster Kahanaoi's testimony that Kimsel initially had the gun and not Kahanaoi. See Reed, 77 Hawai'i at 87, 881 P.2d at 1233.

Similar to Silva, 75 Haw. at 443, 864 P.2d at 594, the impact of these asserted facts is suggested by the jury communications in the record. During deliberations in this case, the jury first requested "the 911 call transcript," to which the circuit court responded: "You are in receipt of all the evidence that was admitted at trial." The jury next asked for "clarification on the verbage [sic] of self-defense." Subsequently, the jury asked: "What are the circumstances in which we are considered a 'hung jury?'" Next, the jury indicated they were unable to reach a unanimous decision on the charge of murder in the second degree. After the court asked whether more time would assist the jury in reaching a unanimous verdict, the jury reached a verdict later that day. The jury communications suggest that a clearer rendering of the 911 recording may have impacted the jury decision and that the jury was closely considering Kahanaoi's claim of self-defense. Therefore, on the record in this appeal, we reject Kahanaoi's claim of ineffective assistance of counsel that he bases on the 911 recording and the further testimony he purports should have been obtained from Anoba. However, our ruling is without prejudice to a subsequent HRPP Rule 40 petition, on these grounds, as to whether Kahanaoi's claim of ineffective assistance of counsel may merit relief.

The other bases asserted by Kahanaoi for his ineffective assistance of counsel claim do not satisfy the standard under Silva to preserve an HRPP Rule 40 petition.

## V.  Conclusion

The Judgment of Conviction and Sentence filed on September 1, 2010 in the Circuit Court of the First Circuit is affirmed, without prejudice to a petition under HRPP Rule 40 as set forth above.

DATED:  Honolulu, Hawai'i, October 22, 2012.


On the briefs:

Walter R. Schoettle
for Defendant-Appellant

Brian R. Vincent
Deputy Prosecuting Attorney
City and County of Honolulu
for Plaintiff-Appellee

Presiding Judge

Associate Judge

Associate Judge